IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

JOSEPH DANIEL ROMERO,

    Plaintiff,

v.   No. CIV 15-254 GBW

CAROLYN W. COLVIN,
Acting Commissioner of the
Social Security Administration,

    Defendant.

## ORDER DENYING REMAND

This matter comes before the Court on Plaintiff's Motion to Remand the Social Security Agency (SSA) decision to deny Plaintiff disability insurance benefits and supplemental security income.  *Doc. 19*.  For the reasons discussed below, Plaintiff's Motion is DENIED, and this action is DISMISSED with prejudice.

    I.    PROCEDURAL HISTORY

Plaintiff filed initial applications for disability insurance benefits (DIB) and supplemental security income (SSI) on July 13, 2009.  Administrative Record ("AR") at 131-41.  Plaintiff alleged that he had a disability resulting from morbid obesity, major depression, extreme anxiety, and sleep apnea.  AR at 157-65.  An Administrative Law Judge (ALJ) held a hearing on February 16, 2011.  AR at 24-55.  On May 10, 2011, the ALJ denied Plaintiff's claim.  AR at 7-19.  Plaintiff appealed the denial of his application to the Appeals Council, which

declined review on April 16, 2012.  AR at 1-5.  On February 28, 2013, this Court reversed the ALJ's decision and remanded Plaintiff's claim for rehearing.  AR at 531-58.

On September 4, 2013, Plaintiff attended a second hearing before a different ALJ.  AR at 486-530.  The ALJ issued an unfavorable decision on November 25, 2013, concluding that Plaintiff could perform other jobs in the national economy and therefore was not disabled.  AR at 463-85.  Plaintiff again appealed the denial of his application to the Appeals Council, which declined review on January 21, 2015.  AR at 453-56.  Plaintiff again filed in this Court on March 27, 2015, seeking review of the ALJ's decision.  *Doc. 1.*

## II.    STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), a court may review a final decision of the Commissioner only to determine whether it (1) is supported by "substantial evidence" and (2) comports with the proper legal standards.  *Casias v. Sec'y of Health & Human Servs.*, 933 F.2d 799, 800-01 (10th Cir. 1991).  "In reviewing the ALJ's decision, we neither reweigh the evidence nor substitute our judgment for that of the agency."  *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008) (internal quotations omitted).

Substantial evidence is "more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Casias,* 933 F.3d at 800.  "The record must demonstrate that the ALJ considered all of the evidence, but an ALJ is not required to discuss every piece of evidence."  *Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996).  "[I]n addition to discussing the evidence supporting his decision, the ALJ must also discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly

probative evidence he rejects." *Id*. at 1010. "The possibility of drawing two inconsistent conclusions from the evidence does not prevent [the] findings from being supported by substantial evidence." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007).

### III. PARTIES' POSITIONS

Plaintiff asserts that the ALJ erred by: (1) failing to properly consider the severe impairment of obesity; (2) failing to properly evaluate the opinion evidence of Ms. Jeanne Corns; and (3) failing to properly consider the statements of Ms. Romero, Plaintiff's wife. Defendant argues that: (1) the ALJ reasonably considered Plaintiff's obesity in evaluating his RFC; (2) the ALJ reasonably evaluated the statements of Ms. Corns; and (3) the ALJ reasonably evaluated the statements of Plaintiff's wife. Ultimately, the Court concludes that the ALJ did not err and therefore the opinion should not be overturned.

### IV. ALJ EVALUATION

#### A. Legal Standard

For purposes of Social Security benefits, an individual is disabled when he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To determine whether a person satisfies these criteria, the SSA has developed a five-step test. *See* 20 C.F.R. § 404.1520. If the Commissioner finds an individual disabled at any step, the next step is not taken. *Id*. § 404.1520(a)(4).

At the first four steps of the analysis, the claimant has the burden to show: (1) he is not

engaged in "substantial gainful activity;" (2) he has a "severe medically determinable . . . impairment . . . or a combination of impairments" that has lasted or is expected to last for at least one year; and that either (3) his impairment(s) meet or equal one of the "Listings" of presumptively disabling impairments; or (4) he is unable to perform his "past relevant work." *Id*. § 416.920(a)(4)(i–iv); *Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005).

Step four of this analysis consists of three phases. *Winfrey v. Chater*, 92 F.3d 1017, 1023 (10th Cir. 1996). First, the ALJ determines the claimant's residual functional capacity ("RFC") in light of "all of the relevant medical and other evidence." 20 C.F.R. § 404.1545(a)(3). A claimant's RFC is "the most [he or she] can still do despite [physical and mental] limitations." *Id*. § 404.1545(a)(1). Second, the ALJ determines the physical and mental demands of the claimant's past work. "To make the necessary findings, the ALJ must obtain adequate 'factual information about those work demands which have a bearing on the medically established limitations.'" *Winfrey*, 92 F.3d at 1024 (quoting Social Security Ruling 82-62 (1982)). Third, the ALJ determines whether, in light of the RFC, the claimant is capable of meeting those demands. *Id*. at 1023, 1025.

If the ALJ concludes that the claimant cannot engage in past relevant work, he or she proceeds to step five of the evaluation process. At step five, the burden of proof shifts to the Commissioner to show the claimant is able to perform other work in the national economy, considering the claimant's RFC, age, education, and work experience. *Grogan*, 399 F.3d at 1257.

### B. The ALJ's Decision

On November 25, 2013, the ALJ issued a decision denying Plaintiff's application for

4

benefits. AR at 463-85. In denying Plaintiff's application, the ALJ applied the required five-step sequential analysis. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since his alleged onset data of May 1, 2009. AR at 468. At step two, the ALJ determined that Plaintiff had the following severe impairments: obesity, degenerative disc disease, sleep apnea, left knee arthritis, venous varicosities, and an affective disorder. *Id*. At step three, the ALJ concluded that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of a listed impairment. *Id*.

At step four, the ALJ determined that Plaintiff retained an RFC to "perform sedentary work as defined in 20 CFR 404.1567(a)," with certain listed limitations. AR at 470-76. The ALJ also found that Plaintiff is unable to perform any of his past relevant work. AR at 476. However, at step five, the ALJ found that Plaintiff could perform jobs that existed in significant numbers in the national economy, including positions as a surveillance system monitor, an order clerk, a telephone solicitor, a tax clerk, or a medical voucher clerk. AR at 476-77.

V. **ANALYSIS**

A. <u>**The ALJ Properly Considered Plaintiff's Obesity**</u>

Plaintiff argues that the ALJ failed to properly consider the severe impairment of obesity. *Doc. 19* at 17-20. Social Security Ruling (SSR) 02-1p "requires an ALJ to consider the effects of obesity when assessing RFC, including the fact that the combined effects of obesity with other impairments can be greater than the effects of each of the impairments considered separately." *DeWitt v. Astrue*, 381 F. App'x 782, 785 (10th Cir. 2010) (quoting SSR 02-1p). In determining a claimant's RFC, an ALJ "is required to consider all of the claimant's medically determinable

5

impairments, singly and in combination," and a failure to do so is reversible error. *Salazar v. Barnhart*, 468 F.3d 615, 621 (10th Cir. 2006). However, "an ALJ is not required to discuss every piece of evidence." *Mays v. Colvin*, 739 F.3d 569, 576 (10th Cir. 2014). Furthermore, when an "ALJ indicates he has considered all the evidence[,] our practice is to take the ALJ at his word." *Wall v. Astrue*, 561 F.3d 1048, 1070 (10th Cir. 2009) (internal quotation marks omitted).

Here, the ALJ stated in his opinion that:

Pursuant to Social Security Ruling 02-1p, I have considered the effects of [Plaintiff's] obesity. There is no evidence that [Plaintiff's] obesity has increased the severity of [his] co-existing or related impairments such that the combination of impairments meets or equals a listing. In addition, I also note that no treating or examining provider has specifically attributed additional or cumulative limitations due to obesity. The determination of [Plaintiff's RFC], as detailed below, includes a consideration of [Plaintiff's] obesity.

AR at 470. The ALJ then thoroughly discussed the opinions of Mr. Bechner, Ms. Corns, and Dr. Burger, each of whom considered Plaintiff's obesity. AR at 472-75; *see also* AR at 238-41, 246, 256-59, 293. The ALJ also considered the reports by Ms. Bevoni, which discussed Plaintiff's obesity and advised him to keep food records in order to facilitate his weight loss. AR at 475; *see also* AR at 410-17. After discussing these opinions, the ALJ concluded that "[a]lthough the objective orthopedic findings are not particularly severe, [Plaintiff] is limited to sedentary level work when one considers his obesity in combination with his knee and back problems." AR at 475. As the ALJ expressly discussed much of the evidence in the record regarding the effects of Plaintiff's obesity and explicitly stated that he considered this evidence in determining Plaintiff's RFC, the ALJ did not err in his evaluation of Plaintiff's obesity and its consequences.

## B. The ALJ Properly Evaluated the Opinion of Ms. Jeanne Corns

Plaintiff argues that the ALJ failed to properly evaluate the opinion evidence and erred in assigning weight to the opinion of Ms. Corns, a nurse practitioner. *Doc. 19* at 12-17. An ALJ is required to "consider all medical opinions in the record," and must also discuss the weight assigned to such opinions. *Quintero v. Colvin*, 567 F. App'x 616, 620 (10th Cir. 2014) (citing 20 C.F.R. §§ 404.1527(c)-(e), 416.927(c)-(e)). To determine what weight to give to a medical opinion, the ALJ must consider the following factors:

> (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

*Goatcher v. U.S. Dep't of Health & Human Servs.*, 52 F.3d 288, 290 (10th Cir. 1995); *see also Kilpatrick v. Astrue*, 502 F. App'x 801, 806 (10th Cir. 2012).

Only "medically acceptable sources" can "provide evidence to establish the existence of a medically determinable impairment[,] . . . provide medical opinions[,] . . . [and] be considered treating sources." *Frantz v. Astrue*, 509 F.3d 1299, 1301 (10th Cir. 2007). Acceptable medical sources "include licensed medical or osteopathic doctors, licensed or certified psychologists, licensed optometrists, licensed podiatrists and qualified speech-language pathologists." *Id.* However, other health care professionals that do not constitute acceptable medical sources may still provide evidence to "show the severity of [a claimant's] impairment and how it affects [a claimant's] ability to work." 20 C.F.R. § 404.1513(d). An ALJ "generally should explain the

7

weight given to opinions from these 'other sources,' or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the [ALJ's] reasoning, when such opinions may have an effect on the outcome of the case." SSR 06-03p, 2006 WL 2329939, at *6.

As a nurse practitioner, Ms. Corns does not meet the regulatory definition of an "acceptable medical source." *See* 20 C.F.R. § 404.1513(d)(1). In his opinion, the ALJ explicitly stated that he assigned "some weight but not great weight to the opinions and functional assessments of . . . Jeanne Corns, CNS/CNP." AR at 474. The ALJ thoroughly discussed Ms. Corns' mental RFC assessment of Plaintiff along with her recent treatment notes. AR at 473-74. After examining this evidence, the ALJ concluded that Ms. Corns' opinion is "not consistent with the record as a whole, including the objective clinical findings showing good response to treatment and [Plaintiff's daily activities]." AR at 474. Plaintiff argues that the ALJ's finding of inconsistency is not supported by substantial evidence. AR at 13. The Court disagrees.

First, substantial evidence in the record supports the ALJ's conclusion that Ms. Corns' opinion is inconsistent with the objective clinical findings showing good response to treatment.[1] For example, the ALJ noted that at various times, Ms. Corns found that (1) Plaintiff "has been difficult to treat from a pharmacologic perspective;" (2) Plaintiff "had an angry mood;" and (3) "the future treatment plan was to continue mood stability." AR at 473-74. By contrast, the ALJ

---

[1] Plaintiff argues that "good response to treatment does not equate with the ability to work[,] and the ALJ has failed to provide a link to support that conclusion." *Doc. 19* at 13. However, the ALJ did not make such a finding. Rather, the ALJ accorded "some weight but not great weight" to Ms. Corns' opinions because they are *inconsistent* with other evidence showing good response to treatment. AR at 474. Thus, the Court has reviewed the record to determine if the ALJ's finding of inconsistencies is supported by substantial evidence.

8

noted that "[t]he record shows that [Plaintiff's] mental condition has generally responded well to treatment." AR at 475. The ALJ properly considered Plaintiff's testimony that: (1) "counseling has helped him manage his anger better;" (2) "he is not as explosive as before and that his ability to get along with others has improved;" and (3) he has "become more aware of his mood changes." AR at 475; *see also* AR at 508-10. The ALJ also considered Plaintiff's statement that "as of February 6, 2013, his anger was about half of what it used to be." AR at 475; *see also* AR at 762. Additionally, the ALJ cited a letter from Dr. Steven Sacks stating that Plaintiff "was doing well on Effexor XR, bupropion, and occasional lorazepam." AR at 475; *see also* AR at 253-54. Finally, the ALJ noted that Plaintiff has decreased the frequency of visits to Ms. Corns, which "suggests that his mental condition is not as severe as he alleges." AR at 476; *see also* AR at 507-08. As this plethora of evidence demonstrating Plaintiff's positive response to treatment is inconsistent with Ms. Corns' opinion that Plaintiff was difficult to treat and had issues with anger and mood stability, the ALJ properly accorded "some weight but not great weight" to Ms. Corns' opinion.

Second, substantial evidence in the record supports the ALJ's conclusion that Ms. Corns' opinion is inconsistent with the evidence of Plaintiff's daily activities. For example, the ALJ noted that at various times Ms. Corns found that Plaintiff was markedly limited in his abilities to (1) "maintain attention and concentration for extended periods" and (2) "complete a normal workday and workweek without interruption from psychologically based symptoms . . . ." AR at 473. However, the ALJ noted that Plaintiff "plays a video game . . . four to six hours per day, which approaches the length of a regular eight-hour workday" and that Plaintiff testified that

9

he is capable of completing household chores such as laundry. AR 476; *see also* AR at 238, 501. Plaintiff's ability to perform these tasks suggests that Plaintiff could in fact maintain attention and concentration for extended periods comparable to a typical workday. *See, e.g., Branom v. SSA*, No. CIV 15-605 GBW, Doc. 26 at 16 (D.N.M. June 1, 2016); *White v. Astrue*, No. CIV-09-472-M, 2010 WL 56151, at *3 (W.D. Okla. Jan. 6, 2010) (affirming decision where ALJ considered that the plaintiff "watches television all day and plays video games," which "indicates an ability to concentrate and relate to people"). As the evidence cited by the ALJ is inconsistent with the opinions of Ms. Corns and is also supported by evidence in the record, the ALJ did not err in assigning "some weight but not great weight" to her opinion.

In response to the ALJ's findings, Plaintiff later submitted an affidavit to the Appeals Council stating that, contrary to Mr. Becher's notes, Plaintiff "did not play [video games] every day and . . . would have to take breaks every 30-40 minutes." AR at 461. Additionally, Plaintiff's affidavit stated that he "[could] do most chores but not consistently" and suggested that his current treatment is insufficient. AR at 461-62. Despite its omission from the evidence presented to the ALJ, this Court reviews the affidavit as a part of the administrative record. *See O'Dell v. Shalala*, 44 F.3d 855, 859 (10th Cir. 1994) (holding that "new evidence [submitted to the SSA Appeals Council] becomes part of the administrative record to be considered when evaluating the [ALJ's] opinion for substantial evidence").

The Appeals Council found that although this affidavit is partially inconsistent with the ALJ's opinion, these inconsistencies are not sufficiently significant as to undermine the ALJ's determination regarding Ms. Corns' opinion. The Court agrees. The ALJ found that Plaintiff's

"statements concerning the intensity, persistence and limiting effects [of his symptoms] are not entirely credible . . . ." AR at 472. Plaintiff failed to challenge the ALJ's finding that Plaintiff was not entirely credible, and therefore the Court accepts the ALJ's credibility finding as proper. *See generally doc. 19*. While Plaintiff's self-serving affidavit is partially inconsistent with other evidence in the record, the Court finds that, in light of the ALJ's credibility determination, this affidavit fails to undermine the substantial evidence that supports the ALJ's decision. *See Lax*, 489 F.3d at 1084 ("The possibility of drawing two inconsistent conclusions from the evidence does not prevent [the] findings from being supported by substantial evidence.").

Additionally, Plaintiff attached to his motion a second evaluation of his mental capabilities, conducted by Ms. Corns on March 3, 2014.[2] *Doc. 19-1*. In this evaluation, Ms. Corns again found that Plaintiff was markedly limited in his ability to "complete a normal workday and workweek without interruptions from psychologically based symptoms . . ." and that Plaintiff "becomes very angry at other people and loses the ability to work with them." *Doc. 19-1* at 5, 7. As discussed above, these statements are inconsistent with the rest of the administrative record, including evidence regarding Plaintiff's daily activities and response to treatment. Therefore, the Court finds that Ms. Corns' March 3, 2014 evaluation of Plaintiff does not demonstrate that the ALJ erred in the weight he assigned to her opinion.

---

[2] Plaintiff and Defendant dispute whether Ms. Corns' evaluation of Plaintiff on March 3, 2014 should be considered by the Court, as it is merely attached as an exhibit to Plaintiff's motion instead of being included in the administrative record. *See doc. 19* at 14; *doc. 27* at 22, n. 4. While the Appeals Council apparently did not acknowledge receipt of Ms. Corns' evaluation until after denying review of the ALJ's decision, Plaintiff has provided evidence that the evaluation was faxed to the Appeals Council on August 10, 2014, prior to the Appeals Council's denial of review. *Doc. 19-1* at 1; *doc. 27-1*. However, the Court finds this dispute to be immaterial, as consideration of this second evaluation would not require the Court to remand the ALJ's decision.

11

## C. The ALJ Properly Evaluated the Opinion of Mr. Romero's Wife

Finally, Plaintiff argues that the ALJ failed to properly consider the opinion of Mr. Romero's wife, Antonia, who provided a third-party Function Report.  *Doc. 19* at 20; *see also* AR at 177-84.  While an ALJ must discuss "the uncontroverted evidence he chooses not to rely upon," an ALJ is not required "to make specific written findings of each witness's credibility, particularly where the written decision reflects that the ALJ considered the testimony."  *Clifton*, 79 F.3d at 1009; *see Adams v. Chater*, 93 F.3d 712, 715 (10th Cir. 1996) (finding no error where the ALJ refers to the testimony of the claimant's wife in his written opinion).

Here, the ALJ stated that he "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence."  AR at 471.  In addition, the ALJ specifically discussed Ms. Romero's statement in his written opinion.  *See* AR at 469 ("[Plaintiff's] wife . . . observed in her third-party Function Report that [Plaintiff] plays on-line video games well and that he also watches television, movies, and football."); AR at 469-70 ("[Plaintiff's] wife observed that [Plaintiff] has trouble getting along with others because he becomes easily frustrated and irritable and feels others think poorly of him . . . [but that he also] plays on-line video games with others daily and talks to them about the game.").  As the ALJ's written decision reflects that the ALJ sufficiently considered Ms. Romero's opinion, the ALJ did not err in failing to discuss every piece of evidence contained within her report.  *See Adams*, 93 F.3d at 715.

## VI.    CONCLUSION

Plaintiff has failed to establish that the ALJ committed reversible error. Accordingly, Plaintiff's Motion to Remand to Agency for Rehearing (*doc. 19*) is DENIED, and this action is DISMISSED with prejudice.

IT IS SO ORDERED.

_____
GREGORY B. WORMUTH
UNITED STATES MAGISTRATE JUDGE
**Presiding by consent**